Hey, please, the court. In the Firestone Fibers and Textiles Company opinion written by Judge Wilkinson, this court quoted the standard that applies under Section 701J of the Civil Rights Act. A plaintiff who claims that there has not been reasonable accommodation to his or her religious observance must show that he or she has a bona fide religious belief that conflicts with an employment requirement, that he or she informed the employer of this belief, and that he or she was disciplined for failure to comply with a conflicting employment requirement. That was a quote from the Chamber's opinion, which was, in turn, a quote from an earlier in-bank decision by this court. In this case, the plaintiff clearly met those three standards. Could you identify the employment requirement with which her belief conflicts? Well, it was the attendance during the week. Well, she was given leave to attend all religious observances that she requested leave for under the terms of the leave policy. So it didn't, there was no necessary conflict between her belief if she requested leave in the manner that she usually did. No, Your Honor, with all respect. Okay, when was she not granted leave when she requested it in the form that the employer asked? According to her affidavit, for 26 years, she had simply notified her supervisor of the Jewish religious holidays, and that was sufficient under the employment policy that was followed by the dispute with her. They suddenly, although she had, A, informed them at the beginning of the year, B, put it on their specific calendars of both supervisors, and C, on the last day before she would take off, sent emails to both supervisors, and the second-level supervisor had responded, thanks, which was an important problem in terms of taking off. She was following a policy. This is Judge Shedd. I agree with the facts as you set them out, but you aren't answering, as far as I'm concerned, Judge Duncan's question. It looks to me, what we would call this in South Carolina would be an employment handbook case, that the company failed to follow a procedure in a handbook, maybe terms or Did she follow the normal procedure to request a day off? The fact that she happened to request the second half of Passover, if she'd been granted the first half, that doesn't make it a religious issue. That makes it sort of like a contract of employment case. I don't see where there's any religious implication. It happens to accommodate her on the first two days of this four-day holiday. And I agree with you, based on the record, that thanks probably suggests more, but that case isn't argued like they didn't apply the normal conditions of work to me. I just don't, where is there any indication that this has anything to do with her religion? The most obvious thing, Judge Shedd, is that it was two days that she was absent for a religious observance. But she was always granted leave, always, for religious observances. And the problem that I have, which goes back to Judge Shedd's question, and this is why I'm having some difficulty here, the leave program, and I don't believe this is disputed, specifies that leave had to be requested in a certain way, and that that was reflected both in her work goals and performance factors. And she followed, whenever she followed that program, her leave, was granted, even both before the two days in question and after the two days in question. So there doesn't, it goes back to my question about conflict. It appears that they're completely compatible, as long as you follow what the leave program specifies. And one of the components that we have to find is a conflict between the belief and the requirement. Yes. And if for 26 years this employer had accepted the procedure that she followed in this occasion, there was certainly reason for her reasonably to believe that she could engage in religious observance on the last two days of Passover by following the very same procedure that she had followed for 26 years. But it was not the procedure that she followed to request leave for the first two days. Because on the first two days her immediate supervisor was there on the day before she left. And that's my only point. My only point is it wasn't the procedure, she did follow the appropriate procedure for the first two days. So there was no necessary conflict. But there was a conflict with regard to the last two days. In other words, if somebody for 26 years follows a certain procedure, she should certainly be able to rely on the procedure that the employer has authorized and permitted during that period of time. What this does is it points out a basic flaw in the district court's analysis. First of all, the district court never addressed the question under 701J. We argued it in the briefs. There's not a single word in Judge Hilton's opinion that addresses that question. If, in fact, there's been reliance for 26 years on a certain procedure, that should be something which can be She was granted leave every time. Her employer has a right to know. And if the employer isn't there, if she doesn't follow the program requesting a form or e-mail, then the employer's not going to know. This was, Judge Duncan, this was an ambush. There was no reason for her to think that she could not take off for Passover. Tell me about the 26 years when she was given leave. Did she, what was the procedure that she followed to request leave during all those different times? She says in her affidavit that the procedure that she followed was at the beginning of the calendar year to list all the Jewish holidays, and then everybody knew that she would be off. I mean, the whole point is, in this case, that in terms of the real world, this was an ambush. She took off on the last days of Passover, thinking the day before she left, that on that Friday, when her immediate supervisor wasn't there, that there was going to be no problem. She then takes off. But if it was an ambush on March 26th and March 27th, she followed the policy for those two days, did she not? Coincidentally. And she also followed the policy on, as I recall, in early May. She requested and received leave. Well, this was after she had been ambushed with regard to April 1 and 2 in the last two days of Passover, and because her immediate supervisor was there, there was no problem. If, in fact, her immediate supervisor was there on the day before, she talked to her. The immediate supervisor had one subordinate, which is the plaintiff. They were really in an office across from each other. They could easily talk to each other. The immediate supervisor was not there on that Friday before the last two days of Passover. So she sends an e-mail to her. An Outlook calendar invitation. Pardon? An Outlook calendar invitation. No, no. In addition to the Outlook calendar invitation, she sent a very specific e-mail at noon on Friday saying, I will be off on Monday and Tuesday. The second-level supervisor says, what is this leave request? What reason after 26 years of accommodating the religious observance would they have to, as you put it, suddenly ambush her? Why would one wait? If they were going to set an ambush, why would one wait 26 years to set the ambush? There are new supervisors who don't like her. That's why we say we should at least be entitled to go to a trial and present the facts. When did the supervisors come along? One supervisor came out in 2009 and another one a couple of years later. I don't remember exactly. But these are new supervisors. What year was the Passover observance? Pardon? What year was the Passover? 2013 was the year of this disputed Passover observance. But these same supervisors had granted the leave of March 26th and 27th and granted leave after April 1st and 2nd. They did. And we don't know the facts of prior years. And what we say is we should be entitled to go to a trial. The notion that the judge can make factual findings on a motion for summary judgment, which the judge did in this case, and he never addressed the 701J issue, never said, as Judge Duncan is now saying, well, 701J doesn't apply. Excuse me. I said nothing of the kind. No, I'm sorry. I thought that that was what Your Honor was addressing, whether 701J applied. I read the standards on the 701J. And I was asking you about one of them. Let me ask this. Is your theory that for 26 years the employer accommodated your client under this procedure you said she used? But now there are rogue supervisors who don't like her? Yes. Our theory is that. No, no, wait. So the company hasn't done anything wrong. It's these one or two rogue supervisors who have? Judge, we sued the one or two rogue supervisors. But under this court's decision in the Lisow case, which is also Judge Wilkinson's opinion, we've acknowledged in our reply brief that the individual, what you call rogue supervisors, cannot be held liable under Title VII. It's the employer who would be held liable if the individual supervisors chose not to accommodate for religious observance. And since under the Lisow case. Even if the company didn't know anything about their actions? Your Honor, we originally sued them and we said that under this court's prior holdings the individual supervisors can be held liable. This court has held in the Lisow case and we've acknowledged it in our reply brief that we do not have a Title VII claim. We have a 1983 claim against the individual supervisors. And we think that that can withstand and the summary judgment should be reversed on that issue. But there's no Title VII claim even against rogue supervisors under the Lisow case. I'll reserve it. As far as the employer is concerned here, the whole purpose of these statutes is to encourage employers to respect religious observance on the part of employees. And is one way to encourage employers to do that is of course to take into account and respect the fact that a company has achieved over a 26 year period. As I understand the record, a near perfect record as it should have done of respecting the plaintiff's need to observe the Passover season. Shouldn't that, is that something that we can weigh in terms of resolving this case in terms of the background context through which we look at the plaintiff's claims? The policy on its face seems to me neutral enough. And does the combination of the policy on its face plus the employer's near spotless record of honoring religious observances over two and a half decades, is that a difficulty for you? With all respect, Judge Wilkinson, yes, it is very much of a difficulty because what it does, it ignores and covers up the individual plaintiff's right, which is what the Civil Rights Act is designed to protect. It protects individuals in employment. And if, in fact, a company does comply for 26 years, but then hires supervisors who discriminate against an individual employee and deny her the right to practice her religion. Let me ask you this. Hadn't the supervisors themselves granted leave on a good many occasions before 2000? Here was a time when apparently they decided that they were really going to take it out on this employee. They had had some disagreements. They claimed she was, quote, insubordinate. We have a lot of evidence in the record that even with regard to any alleged insubordination, she would not have been suspended. Maybe she would have gotten a reprimand if that were true. Now, she denies her insubordination. She submitted a letter from her attorney that said this claim of insubordination is false. Let me ask you a question. Let me ask you a question. Are you making a claim that is, so I understand, for my edification, are you making a claim that it is illegal or improper for a company to have a procedure to request leave? No. Are you? No. You just say that the one they had and they had by practice was not properly applied to her in this circumstance. Correct. In other words, for 26 years, she, her religious rights were observed. And suddenly along come two supervisors who decide that they will deny that religious right. And she, therefore, she comes back. She's been ambushed. She comes back and she says, look, what did I do wrong? And they say, well, you didn't speak to your supervisor. I sent an e-mail to both supervisors. My immediate supervisor wasn't even in the office on the Friday before. If you didn't have a religious freedom claim, what would be, as a lawyer, what would be your claim against the employer? I might have the claim, Judge Shedd, that you previously said, which is, look, this was the standard procedure. So some kind of a stop in their practice. I might have that claim. But in this case, this is protected by federal law because it was religious observance. And coming back to Judge Wilkinson's question, the point is, here is an employee who is being denied the right to observe Passover, even though she's given advance notice to her supervisors, even though she's gotten an e-mail that says thanks and the response is thanks, and even though she's put everything on their calendars, nonetheless, they make sure that she cannot observe Passover. Are you making a reasonable accommodation claim or are you making a differential treatment and discrimination claim? I'm making a reasonable accommodation claim, Your Honor. But in any event, if we go to trial and the facts show that there is an unreasonable attitude towards her request. But your basic claim is an accommodation claim. Yes, because it is a Passover claim. It is for her observance of Passover, which was denied without the accommodation we think has to be looked at after she returns. But you're saying that the unreasonable accommodation is the assignment of five days of AWOL or what have you when she observes. And the suspension without pay. When she comes back and she says, I was there for Passover, I gave notice, I followed what I had done for 26 years, and they say, no, we're not going to accommodate you. We're not going to accommodate you. Even though it was Passover, what we're saying is you get five days suspension without pay. And we think the documents prove that that was based on her absence during that period of time. What is the failure to accommodate? Is it the failure to let her use this procedure she's used for 26 years, period, or is the failure to accommodate that being allowed for a religious holiday? What's the failure to accommodate? The failure to accommodate is punishing her after she explains that she has followed the same procedure that she did for 26 years and gave ample notice to take off on a religious holiday. So the failure to accommodate is punishing for taking off on a religious holiday, even though you followed the procedures that you followed all the time and given ample notice. Thank you. Thank you. Mr. Heffin, we'd be happy to hear from you. Thank you, Your Honor. May it please the Court, a couple things I would like to touch upon. First of all, I think Judge Duncan was suggesting that the employment practice that the Airports Authority had, the policy by which employees accrue annual leave, and Ms. Abeles accrued. Can you put that microphone a little closer? Sure. I want to be sure I hear you. The policy under which Ms. Abeles was accruing 26 days of annual leave in 2013, and she was required under the written policies to request and receive approval, that those policies are entirely consistent with an employee's observance of Passover. And it is what the district court found on page 512 in the record, page 6 of the opinion. The district court specifically found, to the contrary, plaintiff could observe her religious holidays and maintain her employment by following neutral rules which apply to all the defendant's employees. That's the crux of this case. If this were a, if this is a reasonable accommodation case, and as this case comes to this court, it is only a reasonable accommodation case, although Judge Wilkerson, as you were sort of alluding to, there's a tension in the way this case has been argued by the plaintiff as to whether it's a more classic disparate treatment. That is, you did these things because you don't like me because of my status. This is an accommodation claim primarily. Let me ask you this just as a factual matter. Had they, how had the request for leave been made over the 26-year period? Page 9 of the joint appendix. The complaint says, paragraph 12. Had there been a written request independently of the outlook calendar? Yes. Yes. Since she began working for EMWA in 1987, plaintiff requested and received each year leave for the observance of the holy days of Passover. That's what it is. And in January of 2013, Ms. Abeles was given a new, a performance plan for the year. Her performance was failing. She was being oppositional. She had been oppositional throughout 2012. And in 2012 and early 2013, page 348 of the appendix. This is the final page of her work goals and performance factors. It tells her what's going to be important for her in this year. It tells her, sorry, page 347. And it says, use leave according to the airport authority's absence and leave policy, including in arriving and departing the work location for the work schedule approved by the MA-26 manager. So it was specifically. Excuse me. I need a very crisp answer. How was leave requested during those 26 years? The answer really is that there's not that much with precision in the record about it. I can tell you what the directive requires. The directive specifically, which is what is referred to in what I just read, the directive specifically says you either fill out a form or you have an exchange of e-mails. I know what the directive said, but what was the practice of the shop? I believe that the practice of the shop under Ms. Hodge. Ms. Hodge became the supervisor, I think, in 2011, maybe the beginning of 2012. I think the practice of Ms. Hodge was to require written, was to require an e-mail exchange, which would indicate approval. Did he require that from the offset? I don't know. It's not in the record. I believe, though, that there is, quote, in the record, the plaintiff acknowledged, and this appears to maybe be part of the problem, that the practice changed over time. And actually, I believe she said she adapted to the practice as it changed over time. Well, she has it both ways because, as I said, I read to you what her complaint says. Her complaint says, I requested and received. That's very different from I advised. Her affidavit says I advised, but her complaint says I requested and received. And if you're requesting and receiving, well, that means you have to put something saying, may I be out on this. You don't even have to say Passover. That's what I think what Judge Shedd was saying. It's not really specifically about Passover. In this country, employers expect their employees to request permission to be absent. Would this have been a problem if her supervisor had been there? Because apparently part of the difficulty is the informality of the arrangement. And if the employer had not been out that day, there could have been a face-to-face exchange. Well, there could have been some kind of exchange, although the day before, Thursday, they were both there. What about the e-mail that was sent and then the response saying thank you? Well, that was from Julia Hodge, who is the second-level supervisor, who was not in a position to approve leave. The leave-approving person is Valerie O'Hara, and Ms. Hodge misunderstood. She understood when Abeles says, I'm reminding you, well, she was presuming that permission had already been obtained. But didn't she respond thanks? Yes, she did. Because she – But just let me say, it seems to me that that is at least an inference. It may not matter, but at least an inference that she accepted what was in the request. Or you could argue against that. But it seems to me, in fairness, the employer doesn't have a completely clean hand in this situation. Because she may well present a claim that you didn't – could have presented a claim that you didn't follow your normal policy. That appears to be not what she's pursuing. She's pursuing a religious claim. But I don't think the company looks so great in this either, number one. But number two, in that regard, why have you just raised and why does the company suggest she's not been a good employee? Why is that relevant to anything we're looking at? It is relevant to the nature of what happened here. Because the letter that she was given, in which she was given the five-day suspension, is the very first charge is insubordination. And that insubordination relates to her performance. Her failure, for example, to provide a plan for how she was going to automate the single document that she produced. No, but that has nothing to do with her request for time off. No, but it has to do with your – I thought your insight earlier that about whether this is simply a failure to follow the procedures, that is, the disciplinary procedures. And the disciplinary procedure involves – every bit involves the insubordination, the failure – No, I said nothing about disciplinary procedures. I was talking about the procedures to get time off. Yes. I think I may have created confusion in that regard because I was asking about the notice with respect to leave policies. And that notice was, in fact, I believe, captured again in the work goals and performance factors at J347. Yes. That I believe were brought to her attention at the beginning of the year. So I may have introduced that element of confusion. No, no. Ashley, thanks, thanks. But you didn't, Judge Duncan. Haven't you raised in your briefing that she was not a good employee, she got a bad rating? Didn't you do that? The ratings – Well, just let me say that. Don't be so particular on it. I know coming into this hearing that I'd read that you make the claim that she wasn't a good employee, she was starting to have problems, hard to deal with generally, correct? Correct. You made that – That is correct. But that – my question is, what does that have to do with the claim of failure to accommodate based on the leave request? It doesn't really have very much to deal with it except – So then I'm wondering why did you – then why did you say that about her? Because there was this tension in the way the case has been argued about whether it's about disretreatment, i.e., we did something to her because we don't like her status as an Orthodox Jew, or whether we failed to accommodate. On the failure to accommodate, regardless of what test you apply, the first element is there needs to be a conflict between an employment practice and religious observance. There is no conflict, as the district court found. She could take leave for every holiday by – Let me see if I understand this. I never understood her claim for accommodation. I think I've heard it through Judge Wilkinson's question as he delineated it. And as Mr. Lewin said, his claim of failure to accommodate is the punishment she received. And so you offer she wasn't a good employee to help justify some of that punishment. I am offering it to justify some of the punishment. But I would like to be clear, in my view, the punishment is not the employment practice. The punishment is the consequence. And in sort of a more – In your brief, I think you were arguing that it was relevant because the penalty for insubordination alone is the five days. I think that's what you said in your brief. That is correct. And in fact, one of the statements in material fact, and in fact the district court also found, that the penalty for the insubordination, for the failure to perform according to instructions, the failure to get the reports in on time, this plan for how to automate, that by itself could have had a minimum penalty of five days. How have you defended this case? I want to know what your understanding is of his claim, the lawyer's claim for his client, that there was a failure to accommodate. How have you been defending this case on what basis for failure to accommodate? Well, I was frankly kind of surprised by Mr. Lewin's response to one of Judge Wilkinson's questions. I understood that the plaintiff was arguing that she had the right to – she did not require permission. And it's actually kind of in her affidavit. She says, I have a right to take these days off and all I need to do is to notify. And it is the employer's point of view that notification is not sufficient. You need to request approval and obtain that approval. But you're talking about the policy. I'm asking you, what did you understand was the attack on failure to accommodate? Was it that you had to follow the leave policy? That you didn't give her an exception? What do you understand is the failure to accommodate in this case? Well, on – I'm just asking you, you tell me. You tell me what it is. Well, I think he's – I think his – the perspective, it's on page 29 of the brief, of his opening brief, is that she was entitled to take off time from work by simply informing her employer of this intent. That she didn't need it. Your basic view, I thought, was that there's no failure to accommodate because there's no conflict. Correct. Under the Supreme Court's cases. But – and that is that if the procedure is followed, leave is granted. Correct. And so if there's no conflict, there's no failure to accommodate because you can't accommodate if there's no policy to change. Right. There's no policy conflict between the use of leave. If you – but let's say – let's say the law of the shop is at variance with the formal policy. And suddenly the policy is invoked after years of shop practice and custom that is different. And at that point a punishment is imposed for AWOL. Would that give rise to a failure to accommodate claim? If there is – if there is no formal conflict with – no conflict with a formal policy, but there's been a custom and practice that is at variance with the formal policy. I don't think it would give rise to a failure to accommodate claim. And tell me why. Because the basis of it would be – of the claim would be disparate treatment. That is, I did it because of some animus I have towards you. And I don't want – and whether the animus is because I think you're a poorly performing employee or whether the animus is because of your orthodox faith. That seems to suggest that you've – and I've had some difficulty with both positions. It seems to me that what you're arguing there is that it should be kind of a McDonnell-Douglas shifting. Well, that was how the district court resolved it because the – But I thought that the Supreme Court said that there was an obligation to not take religion into consideration. There seems to have been some carve-out for religious accommodation claims. There is certainly a carve-out for religious accommodation. But the very first requirement is that there be shown a conflict between the employment practice and the religious observance. And that's really why this case – why the plaintiff's case fails because there is no conflict. Because as she did for 26 years before, as she did on March 26th and 27th, and as she did on the beginning of May, she was able to use the employer's practice. Yes, Your Honor. If we were to decide that – if we were to decide that there is no basis for any claim based out of failure to accommodate or discrimination against or mistreatment for on the basis of religion, in other words, there's no religious animus effect or anything in this case, we decide that primary issue, do we need to decide anything else in this case, the status of the employer, Virginia referral, any of that? Do we need to? I don't think so. I would like to make one note if I may shift just for a moment to the 1983 claims, which Mr. Lewin made reference to the fact that he thinks the individual supervisors are subject to liability. Under those 1983 claims, I would like – it is the airport authority's position and the individual's position that that argument was waived, it was not raised in the opening brief, and cannot be resurfaced for the first time before this Court. With that, I have – are there further questions? I don't have any. Thank you. Thank you for your time. Thank you, sir. Mr. Lewin, we want to hear from you in rebuttal. Let me first address, if I could, the question of what Ms. Abelley's prior practice was. At page 448 of the joint appendix, her affidavit says, I routinely and invariably advised my supervisors well in advance in each calendar year of the dates when Jewish holidays were to be celebrated. My supervisors uniformly accepted this notification as the equivalent of a request for annual leave, and I was absent from work on these specified days. I would frequently remind supervisors of these dates as they approached, but I was never told that annual leave would be denied if I did not make a formal, quote, request for such leave in advance. Before April 2013, my advance notification of the Jewish holidays was always accepted by my supervisors as the equivalent of a request. Let me ask you, Mr. Lewin, because your opposing counsels say you can't make a reasonable accommodation claim without identifying a conflict between a company policy and religious observance. And so what do you say is the conflict? Because the conflict does seem to be an important feature of the religious accommodation claim. So what do you say, and in the course of our discussion, we have indicated, well, there may not be a conflict because every time she follows the terms of the policy as she did on the 26th and 27th and after April 1st, religious leave was indeed granted. So there's no conflict because there's no instance that we can identify where she followed the policy and leave was denied. And don't we have to have an instance in order to identify a conflict? Don't we have to have at least one instance where somebody followed the policy but leave was denied? That's a question I have because it's in trying to... Yes, Your Honor, and that instance is 2013. Ms. Abeles is not worse off and does not have less rights under the Civil Rights Act because she worked for 26 years for the Metropolitan Washington Airport Authority. If that were the first year and she wanted to take off the last days of Passover, there's a conflict. Those days were Monday and Tuesday. She was expected to be in. But it's always... We have instances of where apparently informal requests were made and leave was granted, but do we have an instance of where the formal request was made according to the policy but leave was denied, and don't we need that or do we need that? No, Your Honor, you don't need that because if you look at 2013, in 2013 an Orthodox Jew, Ms. Abeles, was denied the opportunity to take annual leave for the last two days of Passover. Mr. Lewin, your introductory comment seems to suggest that this came as a complete surprise to her, and the reason that I'm having difficulty with that is that I am looking at Susan Abeles' 2013 work goals and performance factors, and it specifically says learns, and because it's asking she is being expected to do certain things, and it says learns and follows safety and security policies and use leave according to the airport authority's absence and leave policy, including arriving and departing the work location per the work schedule approved by MA-26 manager. Yes, Your Honor. We addressed that in footnote 3 of our reply book, and the point is that that discussion was directed to the fact that these supervisors who did not like Ms. Abeles did not like the fact that she was coming at 9.15 rather than at 9 in the morning. That's what including arriving and departing the work location. I was simply asking because... She was not told, we deny, and we would deny a trial, that she was told that any leave in the future had to have some particular formal procedure. She was not told that, and she would deny that if there were a trial. Now, all that we are seeking right now is a trial in which she could testify about what has been happening there. Now, with regard to her leave request, it's very interesting. If the court will look at page 8 of our brief, there's a copy of an e-mail from Ms. Hodge. Counsel for MWAA says she didn't know whether the... Well, Ms. Hodge said on Friday, what is the nature of this leave request? Ms. Hodge viewed it as a leave request, and when she was told it's for Passover, she said thanks. So Ms. Hodge viewed it as a leave request. She was the supervisor of Ms. O'Hara who had one subordinate who was Ms. Abeles. Ms. O'Hara was not there. She received a copy of the e-mail. She received a copy of the response that Ms. Hodge sent. Do you think it's a practical matter that the policy has wavered back and forth between formal request and informal request? Is that what you're... No, we're saying the policy has always been, as Ms. Abeles has said, sort of an informal request. So long as she... In the real world, there's no reason. Your Honor, I'm an Orthodox Jew. When I've worked for people, I've given them a list of what the Jewish holidays are at the beginning of the year, and they know that means I'm going to be out for those days. This is a phony response by saying we didn't know why you would be out. Of course they knew why she was out. Everybody in the whole company knew that she was a Sabbath observer and for 26 years had been absent on Jewish holidays. She listed all the Jewish holidays at the beginning of the year, and suddenly to penalize her, even though she's listed them and has notified her supervisors on the day before she was gone, we submit that's outrageous. That's exactly... And in response to Judge Wilkinson's point, I don't think an employer as to whom there's proof that they've deliberately discriminated against somebody because that person's race, because that person is black, can say, well, we have a very good record with regard to black employees. We promote them. There's a vice president who's black. That's not a reason that justifies denying a right under the Civil Rights Act. Thank you, sir. We will adjourn court and come down and greet counsel. We thank you both.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Allyson K. Duncan